**NOT FOR PUBLICATION**                                                  **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARVIN JOHNSON, | |
|                 Plaintiff, | |
| | Civil Action No. 08-1124 |
| v. | |
| | **OPINION & ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| | Dated: July 28, 2009 |
|                 Defendant. | |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Marvin Johnson's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

## I. BACKGROUND

**A.**      **Plaintiff's Medical And Vocational History**

      Plaintiff is a thirty-eight-year-old man with an eleventh grade education. (Tr. 57, 588.) Plaintiff worked as a dishwasher from March 1988 until April 1989, as a grocery worker from April 1989 to February 1990, and as driver for the United Parcel Service from November 1993 until August 2002. (Tr. 103-06.) Plaintiff also testified that he worked for his brother's

1

construction company sometime between 2002 and 2003. (Tr. 591.) He alleges that he became disabled on August 9, 2002, due to pain from injuries sustained in a work-related fall on March 9, 1999, as well as depression and anxiety-related impairments.[1] (Compl. ¶¶ 5, 6, Tr. 86, 590-91.) Because Plaintiff alleges both mental and physical impairments, the Court will address each in turn.

    1. <u>Physical Impairments</u>

Following Plaintiff's March 9, 1999 accident, but prior to Plaintiff's alleged onset date of disability, Dr. James Charles, M.D., examined Plaintiff on March 25, 1999, and found a normal neurological examination. (Tr. 260-61.) Dr. Charles released Plaintiff for return to work without restrictions on April 5, 1999. (Tr. 261.) This finding was corroborated in an activity status report completed on June 14, 1999 by Plaintiff's treating physician, Dr. David Samuel, M.D., who found that Plaintiff could return to work with some restrictions.[2] (Tr. 229.) In a June 17, 1999 report, Dr. Charles found that motor examination of the left upper limb and both lower limbs was normal, and that the right upper limb was clearly functional. (Tr. 257.) Dr. Charles noted that he suspected that Plaintiff was embellishing his symptoms. (Tr. 257.)

On June 30, 1999, Dr. Alfred Steinberger, M.D., examined Plaintiff and recommended surgery to correct a herniated disc; surgery was performed on August 12, 1999. (Tr. 186-87, 244-45.) During a follow up on September 22, 1999, Dr. Steinberger noted that Plaintiff was doing

---

    [1] Plaintiff alleges pain from numbness in both arms, pins in both hips, surgeries on both elbows, and fused neck bones. (Tr. 86.) Plaintiff testified that he suffers from severe pain in his neck, both arms, and right hip. (Tr. 590.)

    [2] Specifically, Dr. Samuel found that Plaintiff should not engage in repetitive lifting of over fifteen pounds, not push or pull over fifteen pounds, not climb, and not reach above his shoulders. (Tr. 229.)

extremely well and was essentially asymptomatic. (Tr. 240.) A physical examination of Plaintiff revealed full range motion of the neck, as well as full power in all extremities and Dr. Steinberger found that Plaintiff could return to light work on September 27, 1999. (Tr. 240.) On October 18, 1999, Dr. Steinberger found that Plaintiff had done well performing light duty work for the past month and that Plaintiff could resume his previous work without restrictions. (Tr. 239.)

On April 15, 2001, Dr. Arthur Canario, M.D., found that Plaintiff's herniated disk had been treated surgically with good result and noted that Plaintiff had returned to his job. (Tr. 197.) In May 2001, Dr. Ivan Dressner, M.D., found no evidence of spinal cord dysfunction and found on examination that Plaintiff's gait, strength, reflexes and sensation were normal and/or intact and that Plaintiff was neurologically quite normal. (Tr. 201.) On September 10, 2001, Dr. Steinberger again examined Plaintiff and found a full range of motion of the neck, no tenderness, and no neurological deficits. (Tr. 231.)

Following Plaintiff's alleged onset date of disability, Dr. Steinberger reviewed x-rays of Plaintiff's cervical spine taken on October 21, 2002, and found them unremarkable. (Tr. 533.) On October 25, 2002, Dr. Steinberger found that Plaintiff was restricted to work requiring lifting between ten and twenty pounds. (Tr. 532.)

On November 10, 2002, Dr. William Oppenheim, M.D., an orthopedic surgeon, examined Plaintiff for complaints of right elbow pain and found that the soft tissue of that elbow was intact but noted some tenderness over the olecranon[3] caused by inflammation of the bursa in

---

[3] The olecranon is the bony projection of the ulna at the elbow. *Dorland's Medical Dictionary for Healthcare Consumers*, www.mercksource.com (2007) [hereinafter *Dorland's Medical Dictionary*].

that area.[4]  (Tr. 275-76.)  Dr. Oppenheim recommended that Plaintiff undergo removal of the bursa and estimated that Plaintiff would be out of work for approximately four weeks.  (Tr. 276.)  Dr. Oppenheim performed the procedure on December 16, 2002.  (Tr. 285-86.)

Dr. Richard Nachwalter, M.D., examined Plaintiff on December 11, 2002, and found that, with regard to his neck, Plaintiff's pain was manageable and he could return to work without restrictions.  (Tr. 328.)  In May 2003, Plaintiff was diagnosed with herniated discs in his neck and underwent an anterior cervical discectomy, fusion and removal of hardware to correct pain caused by the herniated discs, a procedure performed by Dr. Nachwalter.  (Tr. 313.)  During visits between May 29, 2003, and September 11, 2003, Dr. Nachwalter noted that Plaintiff was doing well, that he had fully recovered from surgery and needed no further treatment.  (Tr. 301-11.)

Reviewing Plaintiff's medical records, Dr. Burton Gillette, M.D., a state agency physician, prepared a physical residual functional capacity ("RFC") assessment on June 17, 2003.  (Tr. 574-81.)  Dr. Gillette found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in a day, sit for six hours in a day, and perform unlimited pushing and pulling.  (Tr. 575.)  Dr. Gillette found no other limitations.  (Tr. 576-78.)

On August 20, 2003, Dr. Nachwalter observed that Plaintiff was doing well.  (Tr. 303.)  On September 11, 2003, Plaintiff reported to Dr. Nachwalter that he was in no pain and was pleased with the results of his cervical discectomy and fusion.  (Tr. 301.)  Dr. Nachwalter found

---

[4] A bursa is a small fluid-filled sac or saclike cavity situated in tissues where friction would otherwise occur.  *Dorland's Medical Dictionary.*

that Plaintiff had fully recovered from surgery and could return to medium-type work.[5]  (Tr. 301.)
On December 29, 2003, Dr. Nachwalter cleared Plaintiff for work without restrictions and
discharged him from care.  (Tr. 340.)

    Reviewing Plaintiff's medical records, Dr. A.M. Pirone, M.D., prepared a second
physical RFC assessment on March 9, 2004.  (Tr. 343-50.)  Dr. Pirone found that Plaintiff could
occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk for six hours in a
day, sit for six hours in a day, and perform unlimited pushing and pulling.  (Tr. 344.)  Dr. Pirone
found no other limitations and also found that Plaintiff's pain had resolved, that he remained
neurologically intact and that he was released for return to work at the medium level of exertion.
(Tr. 344.)  Dr. Pirone noted that Plaintiff's alleged symptoms and functional limitations were
disproportionate, inconsistent and contradicted by the treating physician's assessment.  (Tr. 345.)

    On June 23, 2004, Dr. Bruce Johnson, M.D., examined Plaintiff and reviewed records
submitted by Plaintiff's counsel and noted that Plaintiff's right elbow showed no evidence of
neurologic pathology.  (Tr. 359-62.)

    On October 15, 2004, Dr. Nachwalter completed a cervical spine RFC questionnaire at
the request of Plaintiff's counsel.  (Tr. 364-68.)  Dr. Nachwalter found that, due to pain in his
neck and numbness in his fingers, Plaintiff could sit, stand, or walk for about four hours total in
an eight-hour day, occasionally lift twenty pounds and frequently lift ten pounds.  (Tr. 366-67.)

    On December 15, 2004, x-rays of Plaintiff's right wrist, left elbow and right elbow
revealed no abnormalities or fracture, an x-ray of Plaintiff's hip showed no recent fracture or

---

[5] Medium work involves lifting no more than fifty pounds at a time with frequent lifting
or carrying of objects weighing up to twenty-five pounds.  20 C.F.R. §§ 404.1567(c), 416.967(c).

dislocation, and an x-ray of the right knee was unremarkable. (Tr. 443-45.)

    2. <u>Mental Impairments</u>

Plaintiff was issued a court-order for mental health treatment after testing positive for cocaine while on probation for dealing cocaine. (Tr. 476.) Records from Bayonne Community Mental Health Center ("Bayonne") indicate one overnight psychiatric stay in 2000, but no psychiatric treatment or hospitalizations since that time. (Tr. 470-88.) At an April 2004 evaluation, Plaintiff had no suicidal thoughts or thoughts of hurting others, no seizures, hallucinations, or overdoses due to alcohol or drug use. (Tr. 476-79.) Plaintiff denied having a drug or alcohol addiction. (Tr. 479.) On mental status examination, Plaintiff's appearance, behavior, speech, mood perceptions, thought process, thought content, immediate recall, recent and remote memory, concentration, and orientation in all three spheres were all within the normal limits. (Tr. 480.) During a June 1, 2005 psychiatric examination, Plaintiff was observed to have good eye contact, and was also observed to be pleasant, cooperative, laughing, and smiling. (Tr. 475.) Plaintiff denied having psychotic symptoms, had adequate insight and judgment, and displayed average intelligence. (Tr. 475.)

    **B.**    **Procedural History**

Plaintiff filed a claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 21, 2003. (Tr. 57-59, 509-11.) Plaintiff alleged disability since August 9, 2002 due to pain from injuries sustained in a work-related fall on April 9, 1999. (Tr. 86, 590-91.) This claim was denied initially, (Tr. 28, 512), and on reconsideration, (Tr. 39, 495), and a request for hearing was filed. (Tr. 45-46.) A hearing was held before Administrative Law Judge ("ALJ") Gerald J. Ryan on July 21, 2005; Plaintiff, represented by counsel, testified

at the hearing. (Tr. 585-610.) ALJ Ryan denied benefits on October 25, 2005. (Tr. 23.) Plaintiff filed a request for review of ALJ Ryan's opinion on November 22, 2005. (Tr. 13.)

The decision of ALJ Ryan became the final decision of the Commissioner on January 4, 2008, when the Appeals Council affirmed Ryan's denial. (Tr. 7-10) Plaintiff brought this action on March 4, 2008, but did not file its opening brief until January 30, 2009.[6]

**C.     The Disability Standard And The Decision Of The ALJ**

   1.     The Statutory Standard For A Finding Of Disability

An individual is considered disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

---

[6] Plaintiff's brief was due to this Court by August 18, 2008, but was not timely filed. The Court issued an Order To Show Cause on January 27, 2009, five months after the due date, ordering Plaintiff to show cause why this case should not be dismissed, with responses due on February 4, 2009. Rather than respond to the Order To Show Cause, Plaintiff instead filed an over-length brief and a cover letter on January 30, 2009, citing no legitimate reason for the delay and asking that the brief be accepted "as if it were filed on time with the continuing promise of this office that we are in fact getting better at what we do and meeting most, though certainly not all, of our deadlines." Defendant filed a response on February 9, 2009, asking that Plaintiff's brief be rejected by the Court because it was fifty rather than forty pages and permission for the additional ten pages had neither been requested nor granted. Plaintiff then filed an amended brief on February 10, 2009 with no explanation for the re-filing and without having made a request to re-file a brief that fell within the page limits.

Plaintiff is represented by the law firm of Langton & Alter, who represents claimants in a number of other Social Security cases before this Court, including Mirabal v. Commissioner of Social Security (08-1079); Joassaint v. Commissioner of Social Security (08-1606); Araujo v. Commissioner of Social Security (08-5655); Battiato-Musson v. Commissioner of Social Security (08-3531); and Grimard v. Commissioner of Social Security (08-6401). Langton & Alter has repeatedly failed to file timely briefs in these matters. Indeed, briefs have been filed in these cases only at the prodding of the Court. This Order shall serve as notice to Langton & Alter that the Court will, by separate Order, convene a hearing as to why sanctions should not be imposed for failure to comply with the filing deadlines of Local Civil Rule 9.1(a). Because of this firm's habitual filing of extremely late briefs, the Court orders Mssrs. Langton and Alter to inform all new clients prior to retention that, if the firm's briefs are filed late, sanctions may include dismissal of the plaintiff's case.

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be deemed disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

Step One: Substantial Gainful Activity. The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[7] If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of her medical condition. 20 C.F.R. § 416.920(b).

Step Two: Severe Impairment. If the claimant is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments considered severe. A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities." If the claimant does

---

[7] "Substantial" work involves significant physical and mental activities. "Gainful" work is performed for pay or profit. 20 C.F.R. § 416.972.

not demonstrate a severe impairment, he will be found not disabled. 20 C.F.R. § 416.920(c).

Step Three: Listed Impairment. If claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant has such an impairment, he is found disabled. If not, the Commissioner proceeds to the fourth step. 20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity. At Step Four, the Commissioner determines whether, despite his impairment, the claimant retains the RFC to perform his past relevant work.[8] If so, the claimant is found not disabled and the inquiry proceeds no further. If not, the Commissioner proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work. If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work. If he cannot do so, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy. Id.

---

[8] RFC designates the claimant's ability to work on a sustained basis despite his physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite his impairment(s). See 20 C.F.R. § 416.945.

2. The ALJ's Decision

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff has not engaged in substantial gainful activity since August 9, 2002. (Finding 1, Tr. 17.) At Step Two, the ALJ determined that Plaintiff suffers from a combination of physical impairments considered severe.[9] (Finding 2, Tr. 20.) At Step Three, however, the ALJ found that his condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations.[10] (Finding 2, Tr. 20.) In making this finding, the ALJ considered both Plaintiff's physical and mental complaints, even though Plaintiff had not listed any mental impairments on his initial application for DIB and SSI. (Tr. 17-20, 86.)[11]

At Step Four, the ALJ determined that Plaintiff retains the RFC to perform the full range of light work, but that Plaintiff is unable to perform his past relevant work. (Findings 3, 4, Tr. 20.) At Step Five, the ALJ relied on Medical-Vocational Rule 202.18 to find that jobs that

---

[9] Specifically, the ALJ found that Plaintiff has suffered from severe musculoskeletal impairments, secondary to a history of cervical fusion. (Tr. 20.)

[10] In making his finding at Step Three, the ALJ considered Plaintiff's alleged musculoskeletal impairments in his neck and right elbow, history of Perthes disorder, and depression. (Tr. 17-20.) Perthes disorder is a disease of the thigh bone in children, beginning as a degeneration followed by regeneration or recalcification. *Dorland's Medical Dictionary*. The ALJ explained that the history of Perthes disorder could not be regarded as a severe impairment under 20 C.F.R. §§ 404.1521, 416.921 because an x-ray examination of Plaintiff's hip taken in December 2004 showed no fracture or dislocation and Plaintiff's disorder had healed without residuals. (Tr. 19.)

[11] The ALJ also considered evidence of Plaintiff's mental condition, because Plaintiff's counsel raised such issues at the July 2005 hearing. The ALJ found that Plaintiff's depression could not be regarded as severe because his medical records did not show that his depression significantly limits his ability to engage in basic work-related activities such as understanding and executing simple instructions, using judgment, responding appropriately to others and dealing with changes in a routine work setting. (Tr. 19-20.)

Plaintiff is able to perform exist in significant numbers in the national economy. (Tr. 22.) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and, consequently denied his application for benefits. (Finding 6, Tr. 22.)

## II.  DISCUSSION

### A.  Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision. 42 U.S.C.A. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Review Of The Commissioner's Decision

Plaintiff challenges the decision of the Commissioner on grounds that the ALJ's denial of benefits is not supported by substantial evidence. Specifically, Plaintiff alleges that the ALJ erred by (1) failing at Step Two to recognize all of Plaintiff's severe impairments, (Pl. Br. 8-27); (2) inadequately supporting findings at Step Two, (Pl. Br. 27-30); (3) failing to adequately explain Plaintiff's RFC determination at Step Four, (Pl. Br. 30-35); and (4) failing to include vocational expert testimony at Step Five. (Pl. Br. 35-43.) The Court will address each argument in turn.

1. Severe Impairments

At Step Two the ALJ found that Plaintiff suffered from a musculoskeletal impairment which is considered severe but did not find any other severe impairments. (Tr. 20.) Plaintiff argues that this was in error because the ALJ failed to properly evaluate and find "severe" his alleged (a) obesity, (b) prior psychiatric impairment, and (c) hip disorder.[12] (Pl. Br. 6-27.)

    a. Obesity

Plaintiff asserts that the ALJ failed to properly consider the severity of Plaintiff's alleged obesity because the ALJ does not mention Plaintiff's obesity at any point in his decision. (Pl. Br. 16-17, 23-26.) This argument is without merit. First, Plaintiff had not raised the issue prior to filing his brief with this Court; Plaintiff made no claim for benefits on the basis of obesity, did not mention obesity at his hearing, and did not mention obesity in his complaint. Second, substantial evidence supports the ALJ's conclusion that Plaintiff's alleged obesity is not severe. Although the ALJ did not specifically mention Plaintiff's obesity, the ALJ did consider numerous reports in the record from Plaintiff's treating physicians, some of which mention Plaintiff's weight but none of which mentions Plaintiff's obesity as a limitation on his ability to work. (Tr. 18-22, 244, 331.)

Further, a plaintiff cannot allege that obesity caused additional functional limitations without showing that plaintiff's obesity would have affected the five-step sequential analysis undertaken by the ALJ. See Rutherford v. Barnhart 399 F.3d 546, 553 (3d Cir. 2005) (finding that a remand permitting the ALJ to consider explicitly claimant's obesity was not warranted because claimant did not specify how his obesity impaired his ability to work). Here, Plaintiff

---

[12] Plaintiff also incorrectly asserts that the ALJ failed to mention his cervical conditions as a severe impairment, (Pl. Br. 17), yet the ALJ found at Step Two that Plaintiff suffered from a severe musculoskeletal impairment, secondary to a history of cervical fusion. (Finding 2, Tr. 20.)

does not point to any evidence in the record supporting limitations allegedly caused by his obesity, does not specify how his obesity impaired his ability to work, and did not include obesity on his application for SSI and DIB as a condition that limits his ability to work.[13]  (Tr. 86). Instead, Plaintiff's brief states only that his "obesity is well documented in both testimony and in the medical record."  (Pl. Br. 16.)

### b. Psychiatric Impairment

Plaintiff argues that the ALJ improperly dismissed his psychiatric impairments by attributing them to Plaintiff's alleged drug use.  (Pl. Br. 17-20, 22.)  This contention is not supported by the record.  The Court notes, as an initial matter, that Plaintiff did not list any mental impairments on his application for DIB and SSI, yet the ALJ still considered Plaintiff's alleged depression.  (Tr. 19-20, 86.)  The ALJ properly considered the medical evidence in the record, apart from Plaintiff's drug use, and found that Plaintiff's mental impairment was not severe under 20 C.F.R. §§ 404.1521, 416.921.  (Tr. 19-20.)  This finding is supported by substantial evidence.

An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities relate to the ability and aptitude to perform most jobs and include mental functions such as understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to others in a work setting, and dealing with changes in a routine work

---

[13] Plaintiff mistakenly relies on SSR 00-3p and Paulos v. Comm'r of Social Security, 474 F.3d 88 (3d Cir. 2007), in support of his position.  (Pl. Br. 24-26.)  SSR 00-3p was superseded by SSR 02-1p, and is therefore inapplicable here, and in Paulos, the plaintiff's primary alleged impairment was morbid obesity which is not a factor in this case.  Here, Plaintiff did not identify obesity as a disabling impairment on his disability application.  (Tr. 86.)

setting. 20 C.F.R. §§ 404.1521(b)(3-6), 416.921(b)(3-6). The only evidence in the record pertaining to Plaintiff's mental health are documents from the Bayonne Center, where Plaintiff was ordered by the Court for treatment after testing positive for cocaine while on probation. (Tr. 470-88.) Findings from an April 2004 mental state examination were unremarkable; Plaintiff displayed normal appearance, behavior, speech, mood, perceptions, and thought process. (Tr. 480.) Thought content, immediate recall, recent and remote memory and concentration were oriented in all three spheres. (Tr. 480.) During a June 1, 2005 examination, Plaintiff was observed to have good eye contact and was pleasant, cooperative, laughing and smiling. (Tr. 475.) Plaintiff denied psychotic symptoms and was found to have adequate insight and judgment and average intelligence. (Tr. 475.) Taken together, these findings do not indicate any functional limitations to Plaintiff's mental ability to perform basic work functions.

Plaintiff further argues that the ALJ should have evaluated his mental condition under the Commissioner's regulations and policy for drug addiction and alcoholism. (Pl. Br. 18-22.) This is assertion is also erroneous. An ALJ need only consider whether drug addiction and alcoholism were contributing factors if the ALJ first finds the Plaintiff to be disabled, which he did not. 20 C.F.R. §§ 404.1535(a), 416.935(a). Because the ALJ correctly found that Plaintiff was not disabled, he did not need to contemplate Plaintiff's history of drug abuse separately from Plaintiff's impairments (Tr. 22-23.)

      c. <u>Hip Disorder</u>

Plaintiff argues that the ALJ did not properly consider the severity of his hip impairment and asserts that "the ALJ tells us that plaintiff suffers Perthes Disorder but does not bother to tell

14

us what it is or how it impacts...plaintiff."[14] (Pl. Br. 17.) This assertion is inaccurate. Here, the ALJ stated that Plaintiff's hip impairment was addressed during childhood through procedures performed in 1981 and 1986. (Tr. 19.) The ALJ also pointed to a December 2004 x-ray of Plaintiff's hip which showed no recent fracture or dislocation and therefore concluded that Plaintiff's impairment had healed without residuals. (Tr. 19.) There is no other evidence in the record which shows that Plaintiff's hip disorder affects his ability to work in any way and Plaintiff did not list this disorder as a disabling impairment on his application for DIB and SSI. (Tr. 86.) Taken together, this evidence provides substantial support for the ALJ's determination that Plaintiff's hip disorder does not significantly limit his capacity to perform basic work activities, and is, therefore, not severe. See 20 C.F.R. §§ 404.1521(a), 416.921(a).

2. Findings at Step Three

The ALJ found at Step Three that Plaintiff's condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations. (Finding 2, Tr. 17-22.) Plaintiff argues that this finding was in error because the ALJ's evaluation at Step Three is vague and inadequate under the Third Circuit's holdings in Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000), and Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004). (Pl. Br. 27-30.) This argument is without merit. In Burnett, the Third Circuit held that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to a listed impairment was insufficient. 220 F.3d at 119-20. This finding was clarified in Jones, where the Court found that a Step Three analysis did satisfy Burnett because:

---

[14] This type of language is simply rude; whatever point Plaintiff wishes to state about the ALJ can be done with a respectful tone.

> Burnett does not require the ALJ to use particular language or adhere to a
> particular format in conducting his analysis.  Rather, the function of Burnett is to
> ensure that there is sufficient development of the record and explanation of
> findings to permit meaningful review.

Jones, 364 F.3d at 505.

Here, the ALJ's decision demonstrates that the ALJ considered the relevant factors in reaching the conclusion that Plaintiff did not meet the requirements for any listing.  The ALJ considered each of Plaintiff's impairments in turn, relying on and extensively discussing medical evidence, and articulated the reasons why those impairments did not meet or equal the criteria of the Listings.[15]   (Tr. 17-22.)

    3.  RFC Determination

At Step Four, the ALJ found that Plaintiff retained the RFC to perform the full range of light work.  (Finding 3, Tr. 20.)  Plaintiff asserts that this RFC finding at Step Four is not supported by substantial evidence.  (Pl. Br. 30-35.)  Specifically, Plaintiff argues that the ALJ found Plaintiff capable of the full range of light work activity but (a) offers no medical analysis to support that conclusion; and (b) misunderstood the definition of light work activity and therefore misapplied treating physician Dr. Nachwalter's findings.  (Pl. Br. 33-35.)  These contentions are without merit.

    a.  Medical Evidence for RFC

The ALJ found at Step Four that Plaintiff retained the RFC to perform a full range of light work activity as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) and SSR 83-10.  (Tr. 20.)  The

---

[15] Specifically, the ALJ noted findings and observations provided by Dr. Nachwalter, Dr. Steinberger, Dr. Shaw, Dr. Canario, Dr. Dressner, Dr. Oppenheim, Dr. Kulkarni and Dr. Fogari.  (Tr. 17-22.)  The ALJ also referenced diagnostic test results in the record, as well as Plaintiff's symptoms and complaints.  (Tr. 18-22.)

16

ALJ specifically cites the medical evidence on which he relies in reaching this conclusion, and extensively discusses that evidence in five paragraphs spanning two and a half pages. (Tr. 20-22.) The medical evidence discussed by the ALJ provides substantial evidence in support of the finding that Plaintiff retained the RFC to perform the full range of light work.

Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. Jobs fall into this category when they require a good deal of walking or standing, or when they involve sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). In October 2002, about two months after Plaintiff's alleged disability onset date, Dr. Steinberger found that Plaintiff could return to light work, and that his cervical x-ray films were unremarkable at that time. (Tr. 532-33.) Reports of Plaintiff's treating physician, Dr. Nachwalter, show that Plaintiff was cleared for work without restrictions on December 29, 2003. (Tr. 340.) In an RFC assessment in March 2004, Dr. Pirone found that Plaintiff could perform medium work, which includes the ability to perform all light work activities. 20 C.F.R. § 404.1567(c). (Tr. 344.) These reports do not suggest that Plaintiff would be unable to perform light work.

      b. <u>Dr. Nachwalter's Findings</u>

Plaintiff contends that "the ALJ purposefully pleads ignorance with regard to the requirements of light work activity by suggesting...[that] Dr. Nachwalter found that the claimant could sit, stand, and walk for four hours each." (Pl. Br. 33-34.) Plaintiff argues that this assessment shows that the ALJ misunderstands the definition of light work and that Plaintiff cannot perform light work because one must be able to stand and walk six hours in an eight hour workday in order to perform light work activity. (Pl. Br. 33-35.) This assertion is false. The

regulatory definition of light work does not contain a durational requirement for standing and walking, 20 C.F.R. § 404.1567(b), 416.967(b), and Social Security Ruling 83-10 indicated that the full range of light work includes standing or walking off and on for only approximately six hours. Further, Dr. Nachwalter's findings in the referenced October 2004 exhibit are only one portion of a large number of findings by the doctor that were consistent with an ability to perform light work as it is defined in the relevant regulations. During examinations from 2002 to 2003, Dr. Nachwalter consistently found that Plaintiff's upper extremities were strong, measuring five out of five on a motor strength test. (Tr. 301-34.) Dr. Nachwalter cleared Plaintiff to return to medium work in September 2003 and to work without any restrictions as of December 2003, which was Plaintiff's last visit of record. (Tr. 301, 340.) Taken as a whole, Dr. Nachwalter's records clearly support the ALJ's determination that Plaintiff could perform, at minimum, the full range of light work.

    4. <u>Vocational Expert Testimony</u>

Plaintiff argues that because the ALJ misunderstood and misapplied the definition of light work, the ALJ could not apply the vocational rules to deny benefits but rather needed to consult a vocational expert. (Pl. Br. 42.) This argument is without merit. As discussed above, the ALJ did not misunderstand or misapply the definition of light work to Plaintiff's case. Instead, the ALJ properly applied the vocational rules in this case in order to find Plaintiff not disabled.

When limitations imposed by an individual's impairments result in only exertional limitations, as the ALJ found here, and the individual's vocational profile is listed in Appendix 2,

an ALJ directly applies that rule to determine whether the individual is disabled.[16]  20 C.F.R. §§ 404.1569(b), 416.969(b).  Where the findings of fact made with respect to a plaintiff's vocational factors and RFC coincide with all the criteria of a particular rule, that rule directs a conclusion as to whether the individual is or is not disabled.  20 C.F.R. § 404, Subpart P, Appendix 2, Section 200.00(a).  Here, the ALJ considered Plaintiff's age, educational background and prior semi-skilled work history.  (Tr. 22.)  Accordingly, considering Plaintiff's vocational factors and RFC for a full range of light work, the ALJ applied the applicable Medical-Vocational Rule, and correctly concluded that Plaintiff was not disabled.[17]  (Tr. 22-23.)  Thus, on all grounds asserted, the ALJ properly concluded that Plaintiff was not disabled within the meaning of the SSA and, therefore, not entitled to DIB or SSI.

### III.  CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence.  Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff

---

[16] Social Security Act ("SSA") policy considers the physical demands of sitting, standing, walking, lifting, carrying, pushing, and pulling to be the primary strength activities involved in work activity and uses the term "exertional activities" to describe these demands.  POMS § DI 25001.001(B)(10).  An "exertional impairment," according to SSA policy, refers to an impairment which is medically determinable and causes an exertional limitation or limitations.  POMS § DI 25001.001(B)(11).   In general, limitations may be classified as exertional if they affect a claimant's ability to meet the strength demands of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  Here, the ALJ found that Plaintiff's only limitations were with regard to sitting, standing and lifting.  (Finding 3, Tr. 20.)

[17] Specifically, the ALJ applied Medical-Vocational Rule 202.18, 20 C.F.R. Part 404, Subpart P, Appendix 2 which establishes that a claimant who retains the RFC to perform light work, is a younger individual, has a limited education, and whose skills are not transferrable should be found not disabled.  (Finding 6, Tr. 22.)

Social Security benefits.

Therefore, **IT IS** on this 28th day of July, 2009, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.
